Filed 4/6/23  P. v. Fowlkes CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078270 |
| v. | (Super.Ct.No. FVA023840) |
| ALICIA LATRICE FOWLKES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Reversed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Alan L. Amann and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2007, defendant and appellant Alicia Latrice Fowlkes entered a plea agreement and pled guilty to second degree murder. (Pen. Code,[1] § 187, count 1.) In accordance with the agreement, a trial court sentenced her to 15 years to life in state prison. In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which, among other things, amended the definition of murder (§§ 188, subd. (a)(3), 189, subd. (a)) and added a new provision to the Penal Code, which establishes a procedure for vacating murder convictions predating the amendment if they could not be sustained under the amended definition of murder. (§ 1170.95.[2]) Defendant filed a petition for resentencing under former section 1170.95. The court denied the petition, finding that Senate Bill 1437 was unconstitutional. Defendant appealed, and this court reversed and remanded for further proceedings. (*People v. Fowlkes* (Oct. 19, 2020, E073589) [nonpub.opn.].) The trial court issued an order to show cause and, after the evidentiary hearing, denied the petition concluding that defendant was a major participant in the robbery and acted with reckless indifference to life.

On appeal, defendant argues the trial court's findings were not supported by substantial evidence. We conclude the evidence was insufficient to support the court's

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

[2] This provision was renumbered without substantive change to section 1172.6, effective June 30, 2022. (See *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.) This opinion will use the statutory designation in effect at the time defendant file her petition where appropriate and the new statutory designation for events occurring after the change in the law.

finding of reckless indifference to human life. Thus, we reverse the order denying defendant's petition and remand with directions for the trial court to vacate the murder conviction and resentence her on the count for robbery, in accordance with section 1172.6, subdivision (e).

## FACTUAL AND PROCEDURAL BACKGROUND[3]

*The Preliminary Hearing*

Defendant and her female codefendant, L.J. (the girls) drove to a nightclub, where they met up with two males—J.J. and his brother.[4] They parked at a gas station parking lot near the club. Once they got there, J.J. started talking about robbing someone. The idea was for the girls to act as lures to entice the would-be victims.

---

[3] Because defendant pled guilty pursuant to a plea agreement, the factual background is taken from the preliminary hearing transcript (PHT). At the outset of the hearing, the prosecutor asked the court to take judicial notice of the preliminary hearing transcript. Counsel for one of the codefendants objected to the testimony of law enforcement at the preliminary hearing as inadmissible hearsay. The prosecutor argued that the preliminary hearing transcript was admissible at that time, although the law was set to change on January 1, 2022. The court acknowledged the upcoming change in law. After some discussion, the court decided to allow the preliminary transcript since it was "the only evidence" of what had occurred. (See Exh. 3.) The court also reviewed the parole hearing transcript (PRHT), which both parties agreed to.

Defendant now notes that it is not clear the reliance on the preliminary hearing transcript was proper in light of the January 1, 2022 amendment in section 1172.6, subdivision (d)(3), which provides that hearsay evidence that was admitted in a preliminary hearing "shall be excluded from the hearing." However, she also points out that the court primarily relied on the preliminary hearing transcript to describe how she committed the robbery and not to resolve whether she was a major participant who acted with reckless indifference. Thus, she declines to challenge the court's reliance on it.

[4] We note that at the parole hearing, defendant said the other male was J.J.'s nephew.

3

The girls were standing in the parking lot when a car drove up. The girls started talking to the occupants of the car. D.F. was the driver (the driver) and M.R. (the victim) was in the front passenger seat. The girls went up to the car and started talking to them. As they were talking, the driver noticed two Black males pull up in a Jaguar and park. The two males got out of the Jaguar and started approaching the victim's car. The males made contact with the girls and then the girls started to walk away. One of the males went to the driver's side of the car, and the other male went to the passenger's side. They demanded property from the victim and the driver. The male next to the driver pointed a gun at the driver's face/head area, as he demanded the driver give whatever he had on him (e.g., cash). The other male pulled the victim out of the car and placed him in the backseat. Then the driver heard a gunshot. The driver looked to see what happened and saw that the victim had been shot in the head. The male standing next to the driver then took the driver's ATM card and an identification card. The two males walked back to their car. The driver checked on the victim's condition and drove away.

*Parole Hearing*

At her parole hearing, defendant stated that she had known J.J. for two or three years, knew he was a gang member, and was dating him at the time of the murder. Defendant said, once she "was messing around with [J.J.]," and he socked her and gave her two black eyes. She said J.J. would get intense when he got angry, and when asked if he would usually hit her when he became angry, she said he only hit her that one time.

As to the robbery, defendant said that J.J. suggested they go to a club, and she agreed. J.J. called his nephew and suggested defendant bring someone along for him, so

4

she went and picked up L.J. Defendant and L.J. went to the club and sat in the parking lot. J.J. told them he wanted to rob somebody, so they all "talk[ed] about how [they] were going to do it." J.J. said he needed the girls to go up to someone and start having a conversation, and then he was going to rob them. Defendant agreed. She and L.J. parked their car in the gas station parking lot, and J.J. told them he was going to leave and come back. While he was gone, the girls started chatting with the victim and the driver. When J.J. returned and pulled up behind them, defendant said she motioned for J.J. to come over. When he got out of his car, she and L.J. walked away and went over to the club to stand in line. They subsequently heard a gunshot.

Defendant said she ran back to her car and saw that J.J. and his nephew had already left. She also saw the victim's car pulling away slowly with the back door open.

When asked why she was willing to participate in the robbery, defendant said she wanted to please J.J. She said, "I was a part of it, and I agreed to it, not realizing that I was going to be the reason somebody lost their life. I didn't think that far into it. So I was careless with someone's life." Defendant said she knew J.J. was going to rob someone and that he had a gun, but she "did not know he was going to shoot them." When asked if she thought about the possibility of someone getting hurt when she agreed to participate in the robbery, defendant said she did not think about anyone getting murdered. Defendant again stated that she did not think J.J. "would actually shoot him." She added that he "spontaneously shot him, so he shot him for no reason."

Defendant admitted that she had been involved in a prior robbery when she was 17 years old, but said there were no weapons involved. She agreed to go with a girl to a

5

fight, and the girl ended up snatching the purse of the victim, to defendant's surprise. Defendant admitted that from that experience, she had been involved in a criminal act that "turns into something much bigger."

*Hearing on the Petition*

After reviewing the evidence and hearing argument from counsel, the trial court concluded that defendant was a major participant in the robbery who acted with reckless indifference to human life. The court noted that defendant said she knew J.J. had a gun, although she did not think he would use it. The court stated, "Knowledge that you are bringing a gun to a robbery and then being shocked that the gun is used is dangerous business." The court noted that defendant knew J.J. was "intense when he's angry," citing that she had gotten two black eyes from him, and yet she motioned for him to come over to complete the robbery. The court concluded that "knowledge of this shooter, as well as knowledge of him bringing the gun to the scene and pulling it out and putting it against the victim's head, makes her a major participant who showed reckless disregard for human life." The court admitted exhibits for appellate purposes, including the preliminary hearing transcript, the parole hearing transcript, and a surveillance video. (See Exhs. 1, 3, 17)

## DISCUSSION

## There Was Insufficient Evidence That Defendant Acted with Reckless Indifference to Human Life

Defendant contends there was insufficient evidence to support the court's finding that she was a major participant and acted with reckless indifference to human life. She

6

specifically argues that her role as a lure and doing what J.J. told her to do was insufficient to make her a major participant in the robbery. Defendant further contends the mere fact that she knew J.J. was armed during the robbery was insufficient to show she knew he was likely to kill during the robbery. We conclude the evidence supports the finding that defendant was a major participant, but not that she acted with reckless indifference to life.

A. *Relevant Law*

On September 30, 2018, the Governor signed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). " 'The legislation, which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending Penal Code sections 188 and 189, as well as by adding Penal Code section [1172.6], which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions.' " (*People v. Nieber* (2022) 82 Cal.App.5th 458, 469 (*Nieber*).)

"By amending sections 188 (defining malice) and 189 (defining the degrees of murder), Senate Bill 1437 changed 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was

not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*Nieber*, *supra*, 82 Cal.App.5th at p. 469.)[5]

The Legislature also added former section 1170.95. "That section provided that '[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts.' [Citation.] A petition may be filed when the following three conditions are met: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' [Citations.]" (*Nieber*, *supra*, 82 Cal.App.5th at p. 469.)

"If a petitioner makes a prima facie showing that they're entitled to relief, the judge must issue an order to show cause and hold 'a hearing to determine whether to

---

[5] On April 11, 2022, defendant filed a request for this court to take judicial notice of the Assembly Committee on Public Safety, Senate Bill No. 1437 (2018-2019 Reg. Sess.), as amended May 25, 2018, asserting that she discusses the intent of the Legislature in passing Senate Bill No. 1437 in her brief. We reserved ruling for consideration of the request with the appeal. We now deny the request on the ground that the material is not relevant to our determination of the issues on appeal. (*State Compensation Ins. Fund v. ReadyLink Healthcare, Inc.* (2020) 50 Cal.App.5th 422, 442.)

vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced.' " (*People v. Clements* (2022) 75 Cal.App.5th 276, 290-291 (*Clements*).)

At the hearing "to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (Former § 1170.95, subd. (d)(3).) Both parties "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*) If the trial court determines the "petitioner is entitled to relief, [and] murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." (Former § 1170.95, subd. (e).)

B. *Standard of Review*

We review the denial of a resentencing petition under former section 1170.95 for substantial evidence. (*Clements*, *supra*, 75 Cal.App.5th at p. 298.) "Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Id.* at p. 290.)

C.  *The Evidence Was Insufficient*

In this case, the question is whether the evidence was sufficient to support the court's finding that defendant was a major participant and acted with reckless indifference to human life.

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), the California Supreme Court articulated several factors to aid in determining whether a defendant is a "major participant."  The list is not exclusive and includes the role the defendant had in planning the criminal enterprise, her role in supplying or using lethal weapons, her awareness of the dangers posed by the nature of the crime, such as the weapons used or experience of the other participants, whether she was present at the scene of the killing, whether her actions or inactions played a particular role in the death, and what she did after the killing.  (*Id.* at p. 803.)  "No one of these considerations is necessary, nor is any one of them necessarily sufficient."  (*Ibid*.)

The following year in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the court "announced related considerations relevant to determining whether a defendant acted with 'reckless indifference to human life.' " (*In re McDowell* (2020) 55 Cal.App.5th 999, 1007.)  These factors include the defendant's knowledge of weapons used in the crime, how those weapons were used, the number of weapons used, the defendant's proximity to the crime, his opportunity to stop the killing or aid the victims, the duration of the crime, the defendant's knowledge of the killer's propensity to kill, and the defendant's efforts, if any, to minimize the possibility of violence during the crime.  (*Clark*, *supra*, 63 Cal.4th at pp. 616-623.)  The Court also explained that "major participation" and "reckless

10

indifference to human life" " 'significantly overlap both in this case and in general, for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Id.* at p. 615.)

1. *Defendant Was a Major Participant*

We first consider that defendant admitted she was part of the planning of the robbery. Once she and L.J. arrived at the parking lot, J.J. told them he wanted to rob somebody, and defendant said they all "talk[ed] about how [they] were going to do it." The plan was for defendant to act as a lure to attract the victims, in order for J.J. and his nephew to rob them. Although there was no evidence that defendant supplied a gun, she admitted she knew J.J. had one. Furthermore, when J.J. parked his car in the parking lot, defendant motioned for him to come over to rob the victims. We note that defendant admitted she had been involved in a prior robbery, when she agreed to go with a girl to a fight, and the girl ended up snatching the purse of the victim. Defendant admitted, from that experience, that she had been involved in a criminal act that "turn[ed] into something much bigger."

As respondent asserts, without defendant helping to plan the robbery, luring the victims, chatting with them, and then signaling for J.J. to come over, the robbery may have never taken place. This evidence constitutes substantial evidence to support the trial court's finding that defendant was a major participant. Defendant's actions are not like those of getaway driver who parks away from the crime scene and takes no part in the actual robbery of the victims. (See, *People v. Clark*, *supra*, 63 Cal. 4th 522, 614; see also *Enmund v Florida* (1982) 458 U.S. 782.)

11

2. *Reckless Indifference to Human Life*

Although the evidence supports a finding that defendant was a major participant, we conclude that it does not support the court's finding that she acted with reckless indifference to life. The court's finding appears to have been based on defendant's knowledge that J.J. was bringing a gun to use in the robbery, and her knowledge that he could be intense when he became angry since she had received two black eyes from him. However, "any person who plans or participates in an *armed* robbery can be said to anticipate that lethal violence might be used, given that 'roughly 1 in 200 [armed robberies] results in death.' [Citation.] But that fact, without more, does not establish reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 682 (*Scoggins*).) Thus, although the evidence supports a finding that defendant knew J.J. had a gun, her knowledge that he was armed and that lethal force might be used is insufficient to establish reckless indifference to human life. (See, e.g., *Clark*, *supra*, 63 Cal.4th at pp. 617-618 [mere fact defendant knows gun will be used is insufficient to establish reckless indifference to human life]; *Banks*, *supra*, 61 Cal.4th at p. 809; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 988 (*Ramirez*); *People v. Medina* (2016) 245 Cal.App.4th 778, 791 ["knowledge of the possible risk of death inherent in certain felonies—like armed robbery—and knowledge that confederates are armed is insufficient alone to show a reckless indifference to human life"].)

Furthermore, there was no evidence that defendant knew J.J. was likely to use the gun and kill the victim. "A defendant's knowledge of factors bearing on a cohort's likelihood of killing are significant to the analysis of reckless indifference to human life."

12

(*Clark*, *supra*, 63 Cal.4th at p. 621.) Here, there was no evidence that the plan included the use of lethal force. In other words, "there appears to be nothing in the plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery." (*Id*. at p. 623.) The only evidence on the issue was defendant's statements that she did not know J.J. was going to shoot the victim. Defendant said J.J. "spontaneously shot [the victim], so he shot him for no reason." (See e.g., *Banks*, *supra*, 61 Cal.4th at p. 807 ["as in *Enmund*, Banks's killing of [the security guard] was apparently a spontaneous response to armed resistance from the victim"].)

Additionally, there was no evidence that defendant was aware that J.J. had a propensity to kill. There was no evidence that he had killed before. (See *Banks*, *supra*, 61 Cal.4th at p. 807 [no evidence that Matthews's confederates "previously committed murder, attempted murder, or any other violent crime"].) Respondent asserts that defendant "knew that [J.J.] was a volatile gangbanger who was intense when he became angry." Although the evidence showed defendant knew J.J. was a gangbanger, gang membership alone does not demonstrate a propensity to commit lethal violence. (See *Banks*, *supra*, 61 Cal.4th at pp. 810-811; *In re Miller* (2017) 14 Cal.App.5th 960, 976 [although defendant and killer belonged to the same gang and had committed follow-home robberies together, no evidence indicated they had ever participated in shootings, murder, or attempted murder].)

Respondent further contends that defendant knew J.J. could be intense when he became angry since she had received two black eyes from him. The evidence showed that defendant said she "was messing around with [J.J.]," and he gave her two black eyes.

13

However, we note that she said he only hit her that one time. In any event, simply knowing J.J. became angry or was easily provoked to violence, does not show that defendant knew he was likely to kill the victim. (See *In re Scoggins*, *supra*, 9 Cal.5th at pp. 681-682.)

Finally, respondent asserts that defendant's immediate flight from the crime scene after the shooting "demonstrates her recklessness as she made no effort to ascertain whether aid to the victim could have helped." However, the evidence indicates that, after she motioned for defendant to come over to the victim's car, she left the scene and walked over to the club to stand in line. After she heard the gunshot, defendant ran back to the gas station parking lot. She said that J.J. had already left the scene, and she saw the victim's car pulling away.[6] In other words, the victim had already left the scene before defendant returned, and there was no opportunity for her to render aid.

Ultimately, on this record, we conclude there was insufficient evidence to support the trial court's finding of reckless indifference to human life. "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' " (*In re Scoggins*, *supra*, 9 Cal.5th at pp. 676-677.) There is simply no evidence that defendant intended to participate in anything but a robbery, even though she knew a gun would be used, or that she had a willingness to kill the victim. The

---

[6] We note that the surveillance video shows the victim's car drive away after the shooting, and then J.J. and his nephew drive away. Several seconds later, defendant can be seen running across the parking lot. (See Exh. 1.)

14

circumstances cited by the court and respondent do not establish that defendant knew the robbery would be more dangerous than a "garden-variety armed robbery." (See *Ramirez*, *supra*, 71 Cal.App.5th at p. 987 ["Participation 'in a garden-variety armed robbery' where 'death might be possible but not probable' is insufficient"].) We conclude that, since there was insufficient evidence to support a finding that defendant acted with reckless indifference, the court should have granted defendant's petition for resentencing.

Consequently, we will reverse the court's order denying defendant's petition and remand for resentencing. "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged." (§ 1172.6, subd. (e).)

## DISPOSITION

The order denying defendant's petition under former section 1170.95 petition is reversed and remanded with directions to the trial court to vacate her murder conviction and resentence her in accordance with section 1172.6.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                                        J.

We concur:

McKINSTER _____
                Acting P. J.

RAPHAEL _____
                        J.

15